IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMI P. CHISM,                              )
                                             )
        Plaintiff,                 )    Civil No. 06-6218-JO
                                             )
   v.                                        )    OPINION AND ORDER
                                             )
COMMISSIONER, SOCIAL SECURITY  )
ADMINISTRATION,                          )
                                             )
        Defendant.               )

Drew L. Johnson
DREW L. JOHNSON, PC
1700 Valley River Drive
Eugene, OR  97405

Kathryn Tassinari
HARDER WELLS BARON & MANNING, PC
474 Willamette Street, Suite 200
Eugene, OR  97401

  Attorneys for Plaintiff

Joanne E. Dantonio
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue, Suite 2900
M/S 901
Seattle, WA  98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

   Attorneys for Defendant

JONES, Judge:

Claimant Jami Chism seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB").

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Following a careful review of the record, the court concludes that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and must be affirmed.

## ADMINISTRATIVE HISTORY

Claimant filed an application for DIB on May 13, 2002, alleging an inability to work since October 2, 2001.  The application was denied initially and on reconsideration.

Claimant requested a hearing, which was held before an Administrative Law Judge ("ALJ") on December 1, 2004.  Claimant, represented by counsel, appeared and testified at the hearing, as did her husband, Richard Chism, and a vocational expert ("VE").  At the hearing, claimant amended her alleged onset date from October 2, 2001, to March 1, 2003.  On October 19, 2005, the ALJ issued a decision denying claimant's application.  The ALJ's decision became the final decision of the Commissioner on July 30, 2006, when the Appeals Council declined review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

SUMMARY OF THE ALJ'S FINDINGS

The ALJ first determined that claimant met the nondisability requirements for a period of disability and DIB through the date of his decision, October 19, 2005. The ALJ then employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. See 20 C.F.R. § 404.1520.

The ALJ first found that claimant has not been engaged in substantial gainful activity since her alleged onset date of March 1, 2003. Second, the ALJ found that claimant has severe impairments in the form of "degenerative disc disease of the lumbar spine, questionable fibromyalgia, dysthmia, personality disorder, and polysubstance dependence," but that her impairments, either singly or in combination, do not meet or equal the criteria of any impairment in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 21, 31.

In the next step of the evaluation, the ALJ determined that claimant retains the following residual functional capacity:

> [T]o perform a significant range of light work. Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand

3 - OPINION AND ORDER

    and/or walk for a total of 6 hours a day each[.] The claimant is able to occasionally reach overhead due to degenerative disc disease of the cervical spine. She can climb ladders, ropes, scaffolds occasionally. She can stoop, crawl, or crouch occasionally. Due to the use of narcotics, she must avoid hazards such as dangerous moving machinery or heights. Due to nonexertional limitations, she has a moderate limitation in understanding and carrying out detailed instructions. She has a moderate limitation in interacting appropriately with the general public and in setting realistic goals or plans without the assistance of other people. The undersigned notes that, if the claimant can do light work, she can also do sedentary work.

Tr. 31. In making that determination, the ALJ found that claimant's allegations concerning her limitations were not entirely credible. Tr. 24, 31.

The ALJ next determined, based on the VE's testimony, that claimant cannot return to her past relevant work. In the final step of the evaluation, again based on the testimony of the VE, the ALJ found that claimant, a younger individual with more than a high school education and with transferable skills, could perform other jobs that exist in the national economy, including telephone order taker, data examination clerk, survey worker, and compiler. Consequently, the ALJ found that with or without the use of drugs and alcohol, claimant was not disabled at any time through the date of his decision within the meaning of the Social Security Act, and denied her application for benefits. Tr. 32.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record. I will not, therefore, repeat the evidence except as necessary to explain my decision.

DISCUSSION

Claimant challenges the ALJ's decision on several grounds. Specifically, she asserts that the ALJ erred in describing claimant's fibromyalgia diagnosis as "questionable" at step two of the evaluation; the ALJ failed to properly credit the opinions of Drs. Miller and Klos; the ALJ failed to sufficiently explain his credibility determination; and the ALJ improperly determined that claimant can perform other work in the national economy. I address these arguments in turn.

1.  The ALJ's Step Two Determination of "Severe Impairments"

At step two, the ALJ found claimant's fibromyalgia to be "severe." That he conditioned that finding by calling into question the diagnosis did not change the ALJ's determination. The medical records support the diagnosis, in 2001, of fibromyalgia, but more recent testing did not meet the American College of Rheumatology diagnostic criteria for fibromyalgia, which requires the existence of 11 out of 18 tender points. Despite that, the ALJ gave claimant the benefit of the doubt and found not only that she has fibromyalgia, but also that it is severe.

Moreover, I agree with the Commissioner that the ALJ included all creditable limitations related to claimant's fibromyalgia in the RFC. Consequently, if the ALJ somehow erred in calling claimant's fibromyalgia questionable, the error is harmless.

2.  The ALJ's Treatment of the Opinions of Drs. Miller and Klos

    a.  Dr. Miller

Claimant contends that the ALJ failed to properly credit the opinion of Dr. Miller, a neurosurgeon. Dr Miller examined claimant on May 10, 2005, after the hearing. In his report of the initial consultation, Dr. Miller describes "intractable progressive back symptoms," but it is

5 - OPINION AND ORDER

apparent from the report that the above description is based on claimant's complaints, not on Dr. Miller's own objective findings. Indeed, Dr. Miller described the relevant portions of his physical examination of claimant as follows:

> Her back is not particularly tender. She has limited range of motion. She cannot really extend and with forward bending she can get her hands just about to her feet. Straight leg raising is unremarkable. She is a little tender diffusely in her back. No point tenderness. Buttocks and hips are non-tender. There are no spasms. She has normal stance and a normal gait. Motor testing shows normal power, bulk, and tone in her legs. Reflexes are 2+ and symmetric in her knees and ankles. Sensation is fully intact to pin prick. There is a slight loss in the outside of her left foot but it is not specific.

Tr. 668. To confirm that claimant's complaints of pain likely were due to L5-S1 degenerative disc disease, Dr. Miller ordered a discogram, which took place on July13, 2005. The discogram, "which was really very straightforward," showed negative discs except for L5-S1, "where she had entirely concordant pain and provocation exactly consistent with what I thought clinically * * *." Tr. 667. Dr. Miller opined that with "one level disc disease," ideally she would be treated with disc replacement, but stated that "Providence has yet to approve that type of treatment." As a alternative, Dr. Miller recommended a lumbar fusion. Id.

The ALJ checked with Dr. Miller and learned that claimant had not followed up on his recommendations and had scheduled no further appointments. Based on Dr. Miller's records, which reflect that his descriptions of claimant's pain rest on her self reports, and on claimant's lack of followup on the surgical recommendations, the ALJ gave little weight to Dr. Miller's comments describing claimant's pain.

Notably, Dr. Miller did not offer any opinion that claimant's disc problem limited her ability to sustain work. Instead, claimant appears to rely on Dr. Miller's assessment as objective support for her complaints of debilitating pain. I find no error in the ALJ's evaluation of Dr.

6 - OPINION AND ORDER

Miller's report or his comments. The ALJ gave sufficient reasons to support his finding that Dr. Miller gave unnecessary weight to claimant's subjective reports of pain.

  b. <u>Dr. Klos</u>

Claimant contends that the ALJ erred in rejecting the opinion of Dr. Klos, a pain specialist at the Chronic Pain Management Clinic. Specifically, claimant points to a letter Dr. Klos wrote on January 6, 2005, to claimant's attorney, in which Dr. Klos opines that

> [a]s far as her ability to work, my impression so far from interviews with [claimant] is that she would not be a reliable employee. Her pain syndrome affects her sleep severely, and her physical functioning severely. I would expect that it would be impossible for her to go to work 5 days per week and only miss two days per month for pain flares. In my opinion she is 100% disabled.

Tr. 658.

Dr. Klos appears to qualify as a treating physician. Consequently, the ALJ must provide "clear and convincing reasons" for rejecting Dr. Klos' opinion, unless that opinion is contradicted by another physician, in which case the ALJ need provide only "specific and legitimate reasons." E.g., <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005).

In this case, the ALJ dedicated a considerable amount of his decision to explaining his rationale for discounting Dr. Klos' opinions as neither reliable nor credible. Among other things, the ALJ discussed claimant's prescription narcotics abuse, which is well documented in the medical records, and Dr. Telew's opinion on January 10, 2005, that claimant's chemical dependency issues were very severe, have "most definitely been a very significant part of her disability," and "are the major factor in her disability." Tr. 26, 660.

Dr. Klos, on the other hand, stated in August 2004 that he had "quizzed [claimant] at length about previous history of drug or alcohol abuse," and evidently based only on claimant's

7 - OPINION AND ORDER

self-reports, concluded that she was not an "opiate addict." Tr. 618-19. Dr. Klos came to that conclusion despite his evident knowledge that from May 17, 2004, through June 11, 2004, claimant had received in-patient treatment at Serenity Lane for opiate addiction because "[o]piates had become the only priority in her life." Tr. 395. With respect to prescription pain control and based only on his "quiz" of claimant, Dr. Klos determined to continue her on Suboxone, an opiate, even though "[t]he medication is causing some issues for her * * *." In doing so, Dr. Klos explained that "[s]he will be difficult to treat for her pain if we cannot get the Suboxone to help <u>because of the "labeling" she has undergone through a mistake in judgement</u>." Tr. 621. Thus, Dr. Klos appears to have accepted claimant's version of her long history of opiate and substance abuse at face value.[1]

As the ALJ further discussed, after reaching the "startling" conclusion that claimant was not an opiate addict, Dr. Klos continued to treat her, changing and adjusting her medication. On October 19, 2004, Dr. Klos acknowledged in his records the need for the rational use of medications, and noted that claimant's husband "will lock up the medications and control them." Tr. 607. Dr. Klos assessed claimant as "at risk," "Husband will control medication." Tr. 607.

Claimant argues that as between the various medical providers, there are "some unexplained inconsistencies." Plaintiff's Brief, p. 18. To the extent that is true, the task of resolving those inconsistencies is reserved to the ALJ, not to this court. Magallanes v. Bowen, 881 F.2d at 751. Dr. Klos' opinions were contradicted by other objective medical evidence in

---

[1] In reviewing claimant's "migration" from one physician to the next, the ALJ noted that as a matter of public record, claimant's more recent physicians, Drs. Klos and Cordes, both had been sanctioned for their narcotic prescription practices by the Oregon Board of Medical Examiners. Tr. 27.

the record, but even so, the ALJ gave clear and convincing reasons, based both on the objective medical evidence and Dr. Klos' unreliability, for rejecting Dr. Klos' opinions.

3. The ALJ's Credibility Determination

Claimant next challenges the ALJ's finding that her allegations concerning her limitations were not entirely credible. Absent evidence of malingering, once a claimant produces objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged," the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. See, e.g., Morgan v. Commissoner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Claimant focuses her argument on the ALJ's failure to discuss evidence that three drug screens in 2002 and 2003 were negative for opiates, narcotics, or marijuana. Plaintiff's Brief, p. 19. According to claimant, that omission requires that her testimony be credited as a matter of law. Id. Claimant's very brief and conclusory argument on this point ignores the substance of the ALJ's credibility determination, which relies not only on her prescription drug abuse and her drug seeking behavior, but rests on substantial evidence in the record as a whole, including, among other things, discrepancies about drug use, her inconsistent testimony, her admission of lying to her husband, the work she was able to do despite her alleged limitations, her reasons for not working, her self-described activities of daily living, and her reports to medical sources of her physical activities she enjoyed (including tending animals, swimming, exercising, and recreational hobbies). See Tr. 24-25. The ALJ examined all of these factors, which taken together provide more than clear and convincing reasons justifying the ALJ's rejection of claimant's description of herself as disabled.

9 - OPINION AND ORDER

Consequently, I find no error in the ALJ's credibility determination.

4. <u>The ALJ's RFC Determination</u>

Based on all of the above, I find that the ALJ did not err in assessing claimant's RFC. After excluding the testimony and evidence he found to be not credible, the ALJ formulated an RFC that accounts for all the limitations the ALJ found to be supported by substantial evidence. The ALJ was required to do no more than that.

## CONCLUSION

Based upon a review of the record, I conclude that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and is, therefore, AFFIRMED.

DATED this 26th day of October, 2007.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge